**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA <br> and <br> ASSOCIATION OF AMERICAN UNIVERSITIES, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY et al., <br><br> Defendants. | Case No. 1:25-cv-3675-BAH |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR A STAY
AND CROSS-MOTION TO SET BRIEFING SCHEDULE**

Plaintiffs the Chamber of Commerce of the United States of America (U.S. Chamber) and the Association of American Universities (AAU) brought this case because, without notice or warning, Defendants ushered in a sea change to the H-1B visa program that has left employers across all sectors of the American economy scrambling to figure out how they will staff tens of thousands of current and anticipated vacancies that they had intended to fill with H-1B workers but may no longer be able to do so.

The situation is in equal measure dire and urgent. H-1B workers fill essential roles that employers are unable to fill with workers from other domestic sources of labor—from allowing businesses and research-driven institutions to continue making critical advances in innovation and discovery to ensuring that rural healthcare facilities have the staff they need to remain open. For that reason, the U.S. Chamber and AAU have asked for a ruling by December 15, 2025.

Nominally citing the government shutdown, Defendants request a stay of proceedings—a stay that would, in effect, permit them to continue enforcing a Proclamation that is currently inflicting irreparable harm on Plaintiffs.  And they do so even though the Chief Judge of this Court

already has determined that motions like Plaintiffs' should continue according to their usual schedules. Aware of the Chief Judge's order, Defendants attempt to justify their extraordinary request by, essentially, arguing the merits of Plaintiffs' preliminary injunction motion.

Defendants have offered no compelling justification for the relief they seek. Rather than identify a pressing need for a stay, Defendants' motion boils down to a disagreement about whether Plaintiffs' members will be irreparably harmed in the absence of a preliminary injunction. But that disagreement is relevant to *how* the Court should decide Plaintiffs' motion for a preliminary injunction, not *when* the Court should decide it. And Defendants do not otherwise provide any grounds for this Court to conclude that a stay is warranted under the circumstances.

The Court should deny Defendants' motion. Additionally, as set forth herein, the Court should set a briefing schedule to ensure that Plaintiffs' motion receives the prompt adjudication required to prevent severe and irreparable harm to Plaintiffs' members.

## BACKGROUND

As fully explained in Plaintiffs' Amended Complaint (Dkt. 8 at ¶¶ 63–79) and Memorandum in Support of its Motion for a Preliminary Injunction or in the Alternative Summary Judgment (Dkt. 18-1 at 8–11), the H-1B program is critical to the American economy. Among many other instances, businesses hire H-1B workers to foster productivity-boosting innovations that in turn grow those businesses and thus create more jobs for American workers and better products and services for American consumers (*see, e.g.*, Dkt. 18-1 at 9–11, 39–42); health care institutions use the H-1B program to ensure they have the proper staffing and expertise to provide excellent patient care (*see, e.g.*, *id.* at 8, 37, 42); and universities use H-1B workers to conduct essential research, teach students, and care for patients at their affiliated medical centers (*see, e.g.*, *id.* at 9, 37–38, 43).

On September 19, 2025, President Trump announced Proclamation 10973, *Restriction on Entry of Certain Nonimmigrant Workers*, 90 Fed. Reg. 46,027 (Sept. 19, 2025) (the Proclamation).

*See* Hughes Decl. Ex. 1, Dkt. 18-19. The Proclamation, which purports to be issued pursuant to the President's authority under Sections 212(f) and 215(a) of the Immigration and Nationality Act (INA), conditions the entry of noncitizens into the United States under the H-1B program on their prospective employer making a payment of $100,000. *Id.* at 46,028. In other words, the Proclamation imposes a new $100,000 fee for H-1B petitions found nowhere in the text of the INA.

Plaintiffs are two associations that collectively represent the interests of thousands of H-1B employers that currently employ tens (if not hundreds) of thousands of H-1B workers and that planned to hire thousands more in the coming year. As fully detailed in their Amended Complaint (Dkt. 8 at ¶¶ 91–102), memorandum in support of the preliminary injunction and summary judgment motion (Dkt. 18-1 at 12–13, 36), the accompanying declarations (Dkts. 18-4 through 18-17), and below (*infra* at 5–9), Plaintiffs' members are severely injured by the Proclamation. The Proclamation has resulted in largescale, ongoing, and escalating disruption to budgeted resources and anticipated staffing. Many employers can no longer hire any H-1B workers—and more cannot hire as many H-1B workers as planned—meaning that they must disrupt hiring and recruitment plans already in effect, and, in many cases, go without anticipated personnel. Dkt. 18-1 at 39–41. These harms are happening right now.

The U.S. Chamber filed suit on October 16, 2025. *See* Dkt. 1. On Friday, October 24, 2025, Plaintiffs amended the complaint as of right, adding AAU as a plaintiff. *See* Dkt. 8.

Because of the immediate and ongoing harm of the Proclamation, on Friday, October 24, Plaintiffs jointly moved for a preliminary injunction to enjoin the implementation of the Proclamation against their members or—in the alternative—for summary judgment. *See* Dkt. 18.

Defendants have now moved for an indefinite stay of briefing on the preliminary injunction motion in light of the lapse in appropriations. *See* Dkt. 22. In the motion, rather than make any effort to explain why present circumstances require a stay, and despite acknowledging that this District has ordered deadlines in preliminary injunction proceedings to remain in effect, the

government essentially asks the Court to disregard the preliminary injunction posture here. *Id.* at 3 (asking the court to "enter an orderly schedule for summary judgment in this case, rather than proceeding with a combined preliminary injunction/summary judgment motion").

## ARGUMENT

### I.    THE COURT SHOULD DENY THE MOTION FOR A STAY.

"The 'decision to grant a stay . . . is 'generally left to the sound discretion of district courts.'" *Trilogy Fed., LLC v. CivitasDX, LLC*, 2025 WL 1293347, at *2 (D.D.C. May 5, 2025) (Howell, J.) (quoting *Ryan v. Gonzales*, 568 U.S. 57, 74 (2013)); *see also id.* at *4–*5 (denying stay where "the stay would be indefinite and likely result in a delay in resolution of this case" and there was "no 'pressing need' to justify a stay of 'indefinite duration.'" (quoting *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 731 (D.C. Cir. 2012))). Whether a "'stay is immoderate' depends on the particular circumstances of the case." *Id.* (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 257, (1936)). "A court 'abuses its discretion in ordering a stay of indefinite duration in the absence of a pressing need[,]'" and "'[t]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else.'" *Id.* (quotation marks omitted) (first quoting *Belize Soc. Dev.*, 668 F.3d at 731–32, then quoting *Landis*, 299 U.S. at 255).

Defendants' motion for an indefinite stay should be denied. Plaintiffs seek as their primary relief a preliminary injunction, circumstances which Chief Judge Boasberg has already stated should continue to be briefed as usual during the government shutdown. And Plaintiffs' claims are urgent, with relief requested by December 15, 2025, so as to mitigate ongoing harm to cap-exempt members who are unable to file H-1B petitions right now and allow other members adequate time to prepare for the next H-1B lottery. A stay would make it impossible for the Court to adjudicate Plaintiffs' motion in that timeframe, causing severe prejudice to Plaintiffs' members, as their motion exhaustively details.

A.    **Plaintiffs' claims are urgent and require prompt adjudication.**

**1.** Aside from the lapse in appropriations—which Standing Order 25-55 order has clarified does *not* itself amount to good cause to stay preliminary injunction proceedings (see *infra* at 9–11)—the government makes no effort whatsoever to explain why there is good cause for the indefinite stay it now requests. It says nothing about the preservation of judicial and party resources; indeed, it addresses none of the things a litigant ordinarily would identify to explain why the "particular circumstances of the case" warrant a stay, much less does it make out the "clear case of hardship or inequity in being required to go forward" required to justify one. *Trilogy Fed.*, 2025 WL 1293347, at *2 (quoting *Landis*, 299 U.S. at 255).

A stay is improper, first and foremost, because this is a case where there is much more than "a fair possibility that the stay . . . will work damage" to Plaintiffs and their members. *Trilogy Fed.*, 2025 WL 1293347, at *2 (quoting *Landis*, 299 U.S. at 255). Plaintiffs seek urgent equitable relief based on immediate, ongoing, and escalating harms resulting from the Proclamation.

Indeed, the harms of the Proclamation are being felt *right now* and will only continue to escalate in the coming weeks and months. Cap-exempt employers—which includes all of AAU's members and some of the U.S. Chamber's members—are eligible to hire H-1B workers at any time but presently are subject to the $100,000 fee imposed by the Proclamation. Their recruitment and hiring activity is thus frozen or else subject to the extreme burden of the $100,000 fee, which has placed these members in an impossible position. *See, e.g.*, Dkt. 18-1 at 42 (discussing a U.S. Chamber Member, GoRural, whose cap-exempt clients are unable to hire H-1B workers in light of the Proclamation); *id.* at 40-41 (explaining that "in light of the Proclamation, many AAU members are 'in a holding pattern' when it comes to their recruiting efforts"). This includes petitions such members would otherwise be filing now, including for jobs with start dates as soon as January 2026. *See, e.g.*, Dkt. 18-18 at ¶ 9 (AAU member Carnegie Mellon University planned to hire a "Senior Scientist" to start in January 2026); Dkt. 18-11 at ¶ 13 (AAU member University of

Michigan planned to hire two researchers from abroad, to start January 5 and February 1, respectively); Dkt. 18-15 at ¶ 10 (AAU member Washington University in St. Louis planned to file petitions the week of September 21, 2025, for critical roles at its affiliated hospital).

Nor have the U.S. Chamber's cap-subject members escaped the immediate and ongoing harm of the Proclamation. *See generally* Dkt. 18-4 at ¶¶ 14–27 (describing known ongoing and imminent harms to dozens of U.S. Chamber members). For many of these members who hire H-1B employees through the annual lottery, H-1B recruitment already was in full swing or was planned to begin imminently when the Proclamation was announced. *Id.* at ¶¶ 16–17. That recruitment activity must now be halted, placing these employers at a competitive disadvantage in the global marketplace for skilled labor. Dkt. 18-1 at 39–40; *see also* Dkt. 18-4 at 19–20. Instead, these employers are scrambling to fundamentally reset their staffing plans, which will include triaging which positions they must leave unfilled given their inability to fill them all with H-1B workers, which roles to move overseas, and, accordingly, which projects will need to be reorganized, downsized, or eliminated. Dkt. 18-1 at 39–40; *see also* Dkt. 18-4 at 19–20. These resource-intensive preparations already are diminishing these businesses' working capacity and will continue to do so with increased intensity in the months to come.

Precisely because of these exigencies, Plaintiffs have respectfully requested a ruling on their motion be made by December 15, 2025, if possible for the Court. *See* Dkt. 18 at 2.

**2.** Such circumstances are familiar grounds for denying requests for a stay. In *United States v. US Airways Group, Inc.*, 979 F. Supp. 2d 33, 34 (D.D.C. 2013), for instance, the court held that a "stay would be inappropriate," notwithstanding a lapse in appropriations, given the "clear[] significan[ce]" of the case "for both sides," the "amount of money at stake," the presence of a looming "deadline" before which relief needed to be entered to be effective, and the "vested interest in the adjudication of this case without delay" held by the parties and third-parties, such as interested employees. *Id.* at 34–35. Here, likewise, the case is of enormous practical significance for both

sides, there are billions of dollars at stake, and a prompt ruling is important not just for the parties but also for the individual H-1B applicants whose petitions are directly affected, Plaintiffs' members, and many employees whose livelihoods are affected by whether their employers are able to fully staff planned projects with H-1B workers. And the need for "prompt adjudication" (*id.* at 35) is especially clear. Not only is there an *impending* deadline, as there was in *US Airways Group*—here, the March 2026 lottery, for which significant advance planning is required—but also for cap-exempt employers, hiring is supposed to be happening *now*.

Similarly, in *Priests For Life v. U.S. Dep't of Health & Hum. Servs.*, 2013 WL 5572730, at *1 (D.D.C. Oct. 2, 2013), the court deemed a stay request premised on a lapse in appropriations "inappropriate," noting that a preliminary injunction motion was pending, "irreparable harm" had been "alleged," and relief was needed by a certain date. *See also, e.g.*, *Roman Cath. Archbishop of Washington v. Sebelius*, 2013 WL 5570185, at *1 (D.D.C. Oct. 3, 2013) (same). Again, the same reasoning compels denial of the government's stay motion.

**3.** In the face of all this, the government invites this Court to disregard Plaintiffs' thorough allegations—and, indeed, well-supported showing—of irreparable harm, all while barely discussing *any* of the irreparable harm arguments made or evidence cited in Plaintiffs' motion. Rather than accept the government's thinly supported invitation to prejudge Plaintiffs' preliminary injunction motion, the court should simply *adjudicate* the motion on schedule, just as this District repeatedly has said is appropriate in the case of preliminary injunction motions. *See infra* at 9–11. Regardless, none of the cursory points defendants raise have merit.

The government says that Plaintiffs' concerns are "speculative" because the complaint is about "*future* H-1B petitions the plaintiffs will purportedly file, not any currently-pending H-1B petitions that they claim are subject to the fee required by the Proclamation." Dkt. 22 at 2. But this entirely disregards (1) that Plaintiffs' cap-exempt members are currently eligible to hire H-1B workers right now but are unable to do so because of the $100,000 fee and (2) that Plaintiffs'

efforts to recruit H-1B workers, even for future cap-subject petitions, either already are well underway or are set to begin imminently, and they need relief now to make those recruitment efforts possible. And it is, of course, entirely common for preliminary injunctions to issue to prevent *future* threatened harm, let alone current, ongoing, *and* future harm, as is the case here. *See, e.g.*, *Am. Oversight v. Hegseth*, 788 F. Supp. 3d 14, 29–30 (D.D.C. 2025) (granting preliminary injunction where "Plaintiff's *contemplated* harm" was "*likely* to occur" (emphasis added)).

The government also questions why Plaintiffs' members would be unable to simply hire U.S.-based workers to fill the roles vacated if employers are unable to hire H-1B workers. Dkt. 22 at 2. But the whole point of the H-1B program is to allow businesses to hire noncitizens when U.S. based workers are not readily available. So, no surprise, attaching a penal $100,000 fee to H-1B visa petitions will inflict all the harm that the program aims to avoid. In particular, Plaintiffs' motion explains in detail why the Proclamation would leave employers unable to fill many vacancies, forcing numerous employers to contemplate leaving these positions unfilled or moving them overseas. *See* 18-1 at 39–41. To take just one example, in its declaration, AAU member Washington University in St. Louis explained that its Department of Anesthesiology "has resorted to recruiting outstanding clinical anesthesiologists outside the U.S. due to a severe shortage of anesthesiologists educated at U.S. medical schools," and that the three H-1B petitions it would have filed this fall but for the Proclamation would have helped to make up "20% of the[ir] anticipated shortfall" of anesthesiologists. Dkt. 18-15 at ¶ 10. Delayed petitions and the potential loss of these doctors will mean "longer wait times for procedures requiring anesthesia," and a "drastic[]" reduction in the number of surgeries that can be performed. *Id.* at ¶ 10-11.

The government also says that Plaintiffs' irreparable harm—should their members decline to file H-1B petitions due to the $100,000 fee—would be "self-inflicted" and thus not irreparable. Dkt. 22 at 1-2. That is preposterous. The harm comes from the Proclamation, whose stated purpose and predictable effect is to deter U.S. employers from using the H-1B program that Congress

created. The only support the government cites for its contention is a case in which all the plaintiffs needed to do was apply for simple permits that would have allowed them to "continue their activities . . . for the duration of the[] lawsuit[]." *Safari Club Int'l v. Salazar*, 852 F. Supp. 2d 102, 122–123 (D.D.C. 2012). That holding has no bearing here, where the government has imposed a *$100,000* fee that is more than *25 times* the fees typical H-1B petitioners historically have paid, and which many of Plaintiffs' members, particularly small businesses and nonprofits, cannot afford. *See, e.g.*, Dkt. 18-1 at 38 (explaining that AAU's members "cannot cobble together funding to pay the Proclamation's exorbitant fee"); *id.* at 39 (discussing HJI Supply Chain Solutions, which cannot afford to pay the $100,000 fee); *id.* at 42 (discussing GoRural, whose clients include small rural medical facilities that cannot afford a $100,000 fee).

Finally, and relatedly, the government argues that any complaint about the Proclamation is simply about economic harm. Dkt. 22 at 1. But this argument overlooks several basic points already set out in Plaintiffs' motion: First, the harms that Plaintiffs invoke are *not* purely economic; rather, they relate to things like Plaintiffs' members' ability to recruit and retain staff, the need to massively restructure staffing plans and even cancel planned projects if the Proclamation remains in effect; and the inhibition of Plaintiffs' members' ability to satisfy their business and institutional missions. *See* Dkt. 18-1 at 36–43. Plaintiffs explained, moreover, that even insofar as some of their harms *are* arguably economic in nature, economic harm remains irreparable where, as here, it cannot be recovered—for instance, consequential damages caused by the government's action but unrecoverable because of sovereign immunity (*see id.* at 43)—or where the very existence of the business is threatened (*see id.* at 42).

## B. This District already has determined that preliminary injunction proceedings should not be delayed by the government shutdown.

The government's sole affirmative rationale for an indefinite stay is the ongoing lapse in appropriations. *See* Dkt. 22 at 1. But, as the government acknowledges, on October 1, 2025, Chief Judge Boasberg issued Standing Order No. 25-55, which—even while finding good cause to stay

deadlines in most "matters in which the United States, its agencies, and its officers and employees are involved"—expressly carves out the exact circumstances of this case. It states that "[t]his Order shall not extend the United States' deadlines to respond to motions for temporary restraining orders or preliminary injunctions." In other words, the lapse in appropriations is *not* good cause for an indefinite stay in the present circumstances. *See, e.g.*, *Ctr. for Taxpayer Rts. v. Internal Revenue Serv.*, 2025 WL 2801862, at *1 (D.D.C. Oct. 1, 2025) (denying government's motion to stay deadline to file the administrative record "because Standing Order 25-55 'shall not extend the United States deadline to respond to motions for . . . preliminary injunction'" and "the administrative record is necessary to the resolution of Plaintiffs' motion for a preliminary injunction." (quoting Standing Order 25-55) (alteration in original))).

The government does not dispute that Order 25-55 counsels against a stay where a preliminary injunction motion is at issue. Instead, it raises the wholly unsupported assertion that Plaintiffs have attempted to "side step" Standing Order 25-55 by making a request for preliminary injunctive relief. Dkt. 22 at 3. That contention, in turn, depends on the government's arguments that there is no irreparable harm. But, as detailed in Plaintiffs' motion (Dkt 18-1 at 36–44) and above (*supra* at 5–9), that is simply not true. On the contrary, the motion makes clear on its face and throughout that a preliminary injunction is the primary relief Plaintiffs request, and only "in the alternative" do they ask for summary judgment.

Nor does 31 U.S.C. § 1342 support a stay. *Cf.* Mot. at 3. Section 1342 prohibits the "United States Government" from "accept[ing] voluntary services . . . exceeding that *authorized by law.*" 31 U.S.C. § 1342 (emphasis added). But the local rules of this District require defendants to respond to Plaintiffs' motion by November 3, and Order 25-55 does not relieve them of this obligation. *See* LCvR 65.1(c); *supra* at 9–10. Any services performed to meet these requirements are thus "authorized by law," particularly once the Court denies Defendants' motion. 31 U.S.C. § 1342. As Chief Judge Srinivasan has explained, where a court "denies [a] request for a stay and

adheres to its existing schedule," this "constitute[s] express legal authorization for the activity to continue." *Kornitzky Grp., LLC v. Elwell*, 912 F.3d 637, 638 (D.C. Cir. 2019) (Srinivasan J., concurring); *see also id*. at 638–39 (collecting examples of the D.C. Circuit rejecting stay motions during lapses in appropriation where the government argued for a stay by citing Section 1342).

The government has acknowledged as much. The Department of Justice's contingency plan for the lapse of appropriations explains that "[i]f a court denies" a request to postpone a case until funding is available "and orders a case to continue, the Government will comply with the court's order, which would constitute express legal authorization for the activity to continue." U.S. Dep't of Justice FY 2026 Contingency Plan 3 (Sept. 29, 2025), perma.cc/3WPT-TFQX; *see also id.* at 7 ("If a court denies a litigator's request to postpone a case and orders it to continue, the litigation will become an excepted activity that can continue during the lapse.").

## II.    THE COURT SHOULD SET A BRIEFING SCHEDULE.

Given Plaintiffs' request for relief by December 15, 2025, and in keeping with Plaintiffs' request in its Motion for a Preliminary Injunction or in the Alternative Summary Judgment (which asks the Court to set a briefing schedule commensurate with this date), Plaintiffs further move the Court to set a briefing schedule as follows:

- Defendants' Opposition: November 10, 2025

- Plaintiffs' Reply: November 20, 2025

- Hearing: December 3, 4, or 5, 2025, or another date as may be convenient for the Court

- Order: By approximately December 15, 2025

Plaintiffs respectfully submit that this briefing schedule is reasonable. It provides Defendants 17 days from the filing of the preliminary injunction motion on the evening of October 24, 2025. *Cf.* LCvR 65.1(c) (default deadline of seven days from service). But it will allow the Court to adjudicate Plaintiffs' motion on a sufficiently prompt basis.

Pursuant to LCvR 7(m), undersigned counsel conferred with Defendants' counsel regarding the proposed briefing schedule by telephone on October 28, 2025. Defendants' counsel indicated that Defendants oppose Plaintiffs' motion for a briefing schedule and will not consider agreeing to a schedule unless and until the Court denies the government's motion for an indefinite stay of preliminary-injunction proceedings.

## CONCLUSION

The Court should deny Defendants' motion to stay, and it should set the briefing schedule requested above.


Dated:  October 28, 2025

/s/ *Lindsay C. Harrison*
Adam G. Unikowsky (Bar No. 989053)
Elizabeth Henthorne (Bar No. 1562688)
Ishan K. Bhabha (Bar No. 1015673)
Lindsay C. Harrison (Bar No. 977407)
Zachary C. Schauf (Bar No. 1021638)
JENNER & BLOCK LLP
1099 New York Avenue NW
Suite 900
Washington, DC 20001-4412
T: +1 202 637 6000
F: +1 202 639 6066
lharrison@jenner.com

*Attorneys for Plaintiff Association of American Universities*

Respectfully submitted,

/s/ *Paul W. Hughes*
Paul W. Hughes (Bar No. 997235)
Sarah P. Hogarth (Bar No. 1033884)
Mary H. Schnoor (Bar No. 1740370)*
Grace Wallack (Bar No. 1719385)
Alex Boota (Bar No. 90001014)*
Emmett Witkovsky-Eldred (Bar No. 90012725)*
MCDERMOTT WILL & SCHULTE LLP
500 North Capitol Street NW
Washington, DC 20001
(202) 756-8000
phughes@mwe.com

Daryl L. Joseffer (Bar No. 457185)
U.S. CHAMBER LITIGATION CENTER
1615 H Street NW
Washington, DC 20062
(202) 463-5337
djoseffer@uschamber.com

*Attorneys for Plaintiff Chamber of Commerce of the United States of America*

* *pro hac vice to be filed*