UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> Defendants. | No. 1:25-cv-3675-BAH |

**DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS AND RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Civil Rule 7(h)(1), Defendants hereby submit their statement of undisputed facts in support of their cross-motion for summary judgment, and respond to Plaintiffs' statement of undisputed facts (ECF 18-2).

**I.    Defendants' Statement of Undisputed Material Facts**

1. Proclamation 10973, *Restriction on Entry of Certain Nonimmigrant Workers*, 90 Fed. Reg 46027 (Sept. 24, 2025) (hereinafter the "Proclamation") was made pursuant to the authority granted to the President by Congress in 8 U.S.C. § 1182(f) and 8 U.S.C. § 1185(a). *See* Plaintiffs' Exhibit 1 (ECF 18-19).

2. The Proclamation contains the President's findings as to why unrestricted entry into the United States of certain foreign workers would be detrimental to the interests of the United States.

3. The President's findings in the Proclamation include that abuse of the H-1B nonimmigrant worker program has led to "[t]he large-scale replacement of American workers",

1

"suppress[ed] wages" and "a disadvantageous labor market for American citizens" which "has undermined both our economic and national security." 90 Fed. Reg. at 46027.

4. The President's findings include that employing H-1B workers in entry-level positions at discounted rates undercuts American worker wages and opportunities, and is antithetical to the purpose of the H-1B program, which is "to fill jobs for which highly skilled and educated American workers are unavailable." 90 Fed. Reg. at 46027.

5. The President's findings include that H-1B program abuses are a national security threat because they reduce American wages and "discourage[e] Americans from pursuing careers in science and technology, [thereby] risking American leadership in these fields." 90 Fed. Reg. at 46027.

6. The President's findings include that "[t]he severe harms that the large-scale abuse of this program has inflicted on our economic and national security demands an immediate response" and that "unrestricted entry into the United States of certain foreign workers … would be detrimental to the interests of the United States because such entry would harm American workers, including by undercutting their wages." 90 Fed. Reg. at 46027.

7. The President's findings include that it is "therefore necessary to impose higher costs on companies seeking to use the H–1B program in order to address the abuse of that program while still permitting companies to hire the best of the best temporary foreign workers." 90 Fed. Reg. at 46027.

8. The Proclamation placed entry restrictions on foreign nationals outside of the United States seeking H-1B visas by way of new petitions filed after the effective date of the Proclamation. Plaintiffs' Ex. 1; *see also* Plaintiffs' Ex. 2.

2

9. The entry restriction requires a $100,000 payment. Plaintiffs' Ex. 1; *see also* Plaintiffs' Ex. 2.

10. U.S. Citizenship and Immigration Services (USCIS) has stated that proof payment of the $100,000 payment required by the Proclamation must be submitted with any new H-1B petition filed after the effective date of the Proclamation. Plaintiffs' Ex. 5.

11. No H-1B visas have been revoked as a result of the Proclamation. McTague Decl. Ex. 1.

12. The Proclamation does not apply to aliens holding H-1B visas prior to the date of the proclamation. Plaintiffs' Exs. 1, 2, 3.

13. The Proclamation does not apply to aliens holding visas other than H-1B visas. Plaintiffs' Ex. 1.

14. The Proclamation does not apply to aliens within the United States. Plaintiffs' Exs. 1, 2, 3

15. The Proclamation has a term of one year. Plaintiffs' Ex. 1.

16. The USCIS Memorandum (Plaintiffs' Ex. 2) merely paraphrases and carries out the directives of the President as set forth in the Proclamation. *See* Plaintiffs' Ex. 1, 2.

17. The U.S. Customs and Border Protection Memorandum (Plaintiffs' Ex. 3) merely paraphrases and carries out the directives of the President as set forth in the Proclamation. *See* Plaintiffs' Ex. 1, 3.

18. The State Department website guidance found in McTague Decl. Ex. 1 merely paraphrases and carries out the directives of the President as set forth in the Proclamation. *See* McTague Decl. Ex 1, Plaintiffs' Ex. 1.

19. The State Department FAQs merely paraphrase and carry out the directives of the President as set forth in the Proclamation. *See* Plaintiffs' Ex. 1, 4.

20. The USCIS website section entitled "H-1B Specialty Occupations" (Plaintiffs' Ex 5) merely paraphrases and carries out the directives of the President as set forth in the Proclamation. *See* Plaintiffs' Ex. 1, 5.

21. In the Immigration and Nationality Act (INA), Congress identified different classes of nonimmigrants, each of which is entitled to a different visa. 8 U.S.C. § 1101(a)(15).

22. In the INA, Congress identified the class of nonimmigrants commonly referred to as H-1B. 8 U.S.C. § 1101(a)(15)(H)(i)(b).

23. The Proclamation payment applies to the class of H-1B nonimmigrants whose petitions were filed after the effective date of the Proclamation. *See* Plaintiffs' Ex. 1, Ex. 2, Ex. 5.

24. HJI Supply Chain Solutions, the company identified in Plaintiffs' ECF filing 18-5, did not, as of December 1, 2025, have a job opening for an Integrations Engineer. McTague Decl. Exs. 2, 3.

25. The $100,000 payment required by the Proclamation is not on the USCIS fee schedule for H-1B petition fees. *See* Plaintiffs' Ex. 6.

26. The $100,000 payment required by the Proclamation is paid into a Treasury General Fund Receipt Account (GFRA) for the Department of Homeland Security. Monies deposited into the GFRA remain in the GFRA until the end of each fiscal year and then are swept into the General Fund of the Treasury. *See* Jackson Declaration ¶¶ 4-7.

## II.     Response to Plaintiffs' Statement of Undisputed Material Facts

**Plaintiffs' Fact # 1:** September 19, 2025, the President issued the proclamation Restriction on Entry of Certain Nonimmigrant Workers (The Proclamation). The Proclamation conditions the entry into the United States of certain noncitizens on a $100,000 payment accompanying their petitions for H-1B status, effective September 21, 2025, for one year. Hughes Decl. Ex. 1. The true and correct content of the Proclamation is reflected in Exhibit 1.

**Defendants' Response:** The first sentence is undisputed. Defendants do not dispute that a true and correct copy of the Proclamation, as printed in the Federal Register, is contained in Plaintiffs' Exhibit 1.

With respect to the second sentence, Defendants do not dispute that the Proclamation pertains to certain aliens, that it restricts (as opposed to conditions) entry into the United States of certain aliens absent an exemption, that it relates to certain aliens seeking to enter in H-1B status, that it is effective September 21, 2025, and that it lasts for one year unless extended.

The document speaks for itself, and Defendants dispute Plaintiffs' characterization to the extent it conflicts with the document. By way of example, USCIS has stated that *proof* of payment must accompany the petition, not that the payment must accompany the petition. *See* Plaintiffs' Exhibit 5 at 4 ("When to pay the $100,000 payment"). Furthermore, the Proclamation requires the $100,000 payment in addition to the other requirements of the INA and is not, in and of itself, sufficient for approval of the petition or entry into the United States.

**Plaintiffs' Fact #2:** On September 20, 2025, U.S. Citizenship and Immigration Services (USCIS) released a memorandum entitled *Proclamation, Restriction on Entry of Certain Nonimmigrant Workers, H-1B.* Hughes Decl. Ex. 2. The true and correct content of that document is reflected in Exhibit 2.

**Defendants' Response:** Defendants generally do not dispute Fact #2 except that the subject line of the memorandum was *Proclamation, Restriction on Entry of Certain Nonimmigrant Workers, H-1B*. The Memorandum did not contain a separate title.

**Plaintiffs' Fact #3:** On September 20, 2025, U.S. Customs and Border Protection released a memorandum entitled *Proclamation, Restriction on Entry of Certain Nonimmigrant Workers [H-1B]*. Hughes Decl. Ex. 3. The true and correct content of that document is reflected in Exhibit 3.

**Defendants' Response:** Defendants generally do not dispute Fact #3 except that the subject line of the memorandum was Proclamation*, Restriction on Entry of Certain Nonimmigrant Workers* [H-1B]. The Memorandum did not contain a separate title.

**Plaintiffs' Fact #4:** On September 21, 2025, the United States Department of State published on its website a webpage entitled *H-1B FAQ*. Hughes Decl. Ex. 4. The true and correct content of that document is reflected in Exhibit 4.

**Defendants' Response:** Undisputed.

**Plaintiffs' Fact #5:** USCIS has, on its website, a webpage entitled *H-1B Specialty Occupations*, which includes a section titled "Presidential Proclamation on Restriction on Entry of Certain Nonimmigrant Workers." Hughes Decl. Ex. 5. The true and correct content of that document is reflected in Exhibit 5.

**Defendants' Response:** The first sentence of Fact #5 is undisputed. With respect to whether Plaintiffs' Exhibit 5 is a true and correct copy of the cited webpage, Defendants note that the "More Information" section lacks any text, which is not consistent with the webpage. The remainder of the document appears consistent with the website.

**Plaintiffs' Fact #6:** USCIS maintains a schedule of fees that apply to the various USCIS forms. Hughes Decl. Ex. 6. The true and correct content of that document is reflected in Exhibit 6.

**Defendants' Response:** Undisputed. For clarification purposes, Defendants note that the document in Exhibit 6 is the October 16, 2025, edition. Defendants also note that even though the document in Exhibit 6 was issued *after* the Proclamation, it does not contain a reference to the $100,000 payment as relating to any particular USCIS form, and that is because the payment is not a filing fee associated with a particular USCIS form.

**Plaintiffs' Fact # 7:** On September 19, 2025, the Washington Post quoted the President as saying, in reference to the $100,000 payment described in the Proclamation, "We're going to

6

take that money and we're going to be reducing taxes and we're going to be reducing debt." Hughes Decl. Ex. 24. The President did, in fact, make this statement.

**Defendants' Response:** The Washington Post has credited the President, on September 19, 2025, as making the statement quoted in Exhibit 24. However, Defendants dispute that the statement was made in reference to the $100,000 payment in the Proclamation, and dispute that the Washington Post tied it to the $100,000 payment. The video signing ceremony shows that the statement was actually made in reference to the Gold Card, which was announced on the same day. *See* https://www.whitehouse.gov/presidential-actions/2025/09/the-gold-card/ . The video is available here: https://www.youtube.com/watch?v=d9rENKjxMiw&t=269s. The context for the quote at issue begins around minute 4:26 and continues to 4:47.

**Plaintiffs Facts #8-10:**

The U.S. Chamber is a 501(c)(6) nonprofit organization headquartered in Washington, DC. The U.S. Chamber is the world's largest business federation, representing approximately 300,000 direct members and indirectly representing the interests of more than 3 million companies and professional organizations of every size, in every industry sector, and from every region of the country. Shen Decl. ¶ 1.

The U.S. Chamber advocates for pro-business policies including by advocating on the topic of immigration. Shen Decl. ¶ 3; Hughes Decl. Exs. 18, 25.

The U.S. Chamber litigates in federal court on behalf of its members, including in cases related to immigration and the H-1B program specifically. It also participates in notice-and-comment rulemaking proceedings related to these issues. Shen Decl. ¶ 4; Hughes Decl. Exs. 17, 19, 20.

**Defendants' Response:** The facts in these paragraphs relate to the business of the Chamber of Commerce, based upon the Shen Declaration submitted with Plaintiffs' motion. Defendants have no independent knowledge of any of these facts but have no basis at this time to dispute them other than the general deficiencies in the Shen declaration, noted in response to Fact 11, below. Defendants do not believe such facts are material to the issues presented in summary judgment.

**Plaintiffs Fact # 11:** Hundreds of U.S. Chamber members currently employ, in the aggregate, tens or hundreds of thousands of H-1B workers. These members hire thousands of new H-1B

7

workers every year, and planned to do so again in the one-year period following September 21, 2025. Shen Decl. ¶ 23.

**Defendants' Response:** Defendants dispute this fact as lacking specificity and reliability and as clearly not based upon Mr. Shen's personal knowledge, and thus for failing to comply with Fed. R. Civ. P. 56(c)(4) and 56(e). *See Cobell v. Norton*, 391 F.3d 251, 260-61 (D.C. Cir. 2004) (noting that summary judgment affidavits must comply with personal knowledge requirement of rule). "Hundreds" of members could be anywhere from 200 to over 999, which is a vast differential. To claim those hundreds then employ anywhere between tens of thousands (20,001-99,999) or hundreds of thousands (200,000 – 999,999) H-1B workers lacks any sort of meaningful data or specificity. Furthermore, although Mr. Shen states that information in the declaration is supported by "business records reasonably available to me in my role as Vice President for Immigration Policy" (Shen Decl. ¶ 1), he does not reference any such records or otherwise suggest what information supports these vague numbers. Witness testimony is not admissible if it lacks a sufficient foundation. Fed. R. Evid. 602. Finally, Mr. Shen's declaration states "I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge." Shen Decl. p. 11. While that may suffice for a preliminary injunction, summary judgment carries a higher burden. *See Cobell*, 391 F.3d at 260-61 (D.C. Cir. 2004) (distinguishing requirements for a preliminary injunction under § 1746 and for summary judgment under Rule 56, noting summary judgment is a higher standard). If Mr. Shen must qualify his statement as to whether the facts in his declaration are true and correct, those facts are clearly not based upon his personal knowledge and are not admissible. *See id.*; *see also* Fed. R. Civ. P. 56(c)(4); (e).

**Plaintiffs' Fact # 12:** The U.S. Chamber's membership includes both "cap-exempt" employers who may hire additional H-1B workers at any time, and cap-subject employers whose hiring of H-1B workers requires participation in the annual H-1B visa lottery. Shen Decl. ¶¶ 7-9.

**Defendants' Response:** Disputed. The statements in paragraphs 7-9 are a combination of factual information and legal conclusions. Mr. Shen provides no foundation for the legal conclusions that a member is cap-exempt. Moreover, Mr. Shen provides no examples of a member who is cap exempt in the cited paragraphs nor does he provide any foundation for his alleged personal knowledge that the membership includes cap-exempt employers. Thus, the statements lack support and are inadmissible. Fed. R. Evid. 602; Fed. R. Civ. P. 56(c)(4); (e). At best they may be inadmissible hearsay with no identified exception. Fed. R. Evid. 801.

**Plaintiffs' Fact #13:** One U.S. Chamber member, HJI Supply Chain Solutions, intended to recruit H-1B candidates for an open position in the coming year but would be unable to do so if it must pay $100,000 to sponsor an H-1B petition. *See generally* Daniels Decl.; *see also* Shen Decl. ¶ 18.

**Defendants' Response:** Disputed. Paragraph 18 of the Shen Declaration is inadmissible hearsay because it explicitly relies on the Daniels declaration. *See* Fed. R. Evid. 801. The Daniels declaration (ECF 18-5) states that they have hired one H-1B worker, sponsored another, and would like to hire an H-1B worker for a current job posting for an Integrations Engineer. ECF 18-5, ¶¶ 4-8. However, according to HJI's website, there is no open position for an Integrations Engineer. *See* McTague Decl. Exs. 2, 3 (attaching screenshot of HJI website as of December 1, 2025). Thus, the Daniels declaration is facially unreliable and should be excluded.

The Daniels declaration does not state the salary for the (apparently non-existent) position. It does state, however, that the $100,000 payment for a single engineer is simply too much. It does not, however, provide context for what "too much" means, such as whether the company will go out of business if it must pay $100,000, or simply have lower profits, or makes little business sense in view of the offered salary. Furthermore, it states that the requirements for the job are "a bachelor's degree in computer science, information systems, or a related technical field, 1-3 years of experience in a similar role, and familiarity with the various system communication protocols,

9

database and scripting/query tools, and business applications that the IT team regularly uses." ECF 18-5, ¶ 6. Thus, this is exactly the type of role the President found to be problematic—an IT job with minimal experience required. *See* Proclamation, 90 Fed. Reg. 46027, 46027-28 (Sept. 24, 2025). If HJI cannot fill the (apparently non-existent) job with an American, perhaps the unstated salary offered is too low.

**Plaintiffs' Fact #14:** At least dozens of other U.S. Chamber members similarly intended to sponsor prospective employees for H-1B visas in the coming year but must either eliminate or reduce their H-1B recruitment efforts if they would be subject to a $100,000 fee for new H-1B petitions. Shen Decl. ¶¶ 13-22

**Defendants' Response:** Disputed. The statements in Paragraphs 13-22 of the Shen Declaration are hearsay. Fed. R. Evid. 801. Paragraphs 18, 21, and 22, explicitly state that they are based upon reading the declarations of other people. Paragraphs 13-17 and 19-20 make general references to unidentified members. No exception to the rule against hearsay is identified. Thus, Paragraphs 13-22 are not based upon Shen's personal knowledge, are inadmissible, and cannot be relied upon to support Plaintiffs' motion for summary judgment. *See* Fed. R. Evid. 602, 801; Fed. R. Civ. P. 56(c)(4); (e).

**Plaintiffs' Fact # 15:** Another member of the U.S. Chamber, GoRural, provides recruiting and staffing services to rural hospitals and other rural healthcare facilities and often recruits H-1B candidates. GoRural generates approximately 50% of its revenue from placing workers requiring H-1B visas, which will decrease as GoRural's clients are unable to pay a $100,000 fee. Poser Decl. ¶¶ 1, 6-11.

**Defendants' Response:** Defendants have no independent knowledge of the first sentence of Fact #15. Defendants do not dispute GoRural's representation that it is a staffing company with three employees that fills 50% of vacancies at its end clients with foreign H-1B workers rather than Americans.

Defendants dispute that GoRural's clients cannot pay the $100,000 payment. The statement in the Poser Declaration paragraph 10 is inadmissible. There is no foundation for the statement,

10

such as how Poser knows that the clients cannot pay. There is no identification of the clients. The statement applies to all clients, without any information as to how Poser knows it applies to all clients. In other words, the statement lacks foundation, it is about third parties, so Poser lacks personal knowledge for it, and at best it is inadmissible hearsay if based upon statements of those third parties. As a result, it is inadmissible. *See* Fed. R. Evid. 602, 801; Fed. R. Civ. P. 56(c)(4), (e).

**Plaintiffs' Fact #16:** AAU is a 501(c)(3) nonprofit organization headquartered in Washington, DC. It is an association of leading research universities, 69 of which are based in the United States. Snyder Decl. ¶ 3. AAU's purpose is to promote vital programs of academic research and scholarship and undergraduate, graduate, and professional education. *Id.* ¶ 4. Its mission is centrally focused on ensuring that its members can conduct pathbreaking research that contributes to public health and American economic growth. *Id.*

**Defendants' Response:** The facts in these paragraphs relate to the business of AAU, based upon the Snyder Declaration submitted with Plaintiffs' motion. Defendants have no independent knowledge of any of these facts but have no basis at this time to dispute them. Defendants do not believe such facts are material to the issues presented in summary judgment.

**Plaintiffs' Fact #17:** AAU's U.S.-based members use—and plan to continue using—the H-1B program to hire employees. Snyder Decl. ¶ 5; *see also* ASU Decl. ¶¶ 5, 7; CMU Decl. ¶¶ 5, 8; UIUC Decl. ¶¶ 9, 13; JHU Decl. ¶¶ 5, 8; Michigan Decl. ¶¶ 9, 11; Minnesota Decl. ¶¶ 5, 10; Pitt Decl. ¶¶ 5, 7; Utah Decl. ¶¶ 5-6; WashU Decl. ¶¶ 5, 8; Wisconsin Decl. ¶¶ 5, 7. AAU's members are not subject to the statutory cap on H-1B visas and thus can and do file H-1B petitions on a rolling basis throughout the year. Snyder Decl. ¶ 6; *see also, e.g.*, Michigan Decl. ¶ 12; UW-Madison Decl. ¶ 8.

**Defendants' Response:** Defendants dispute that the evidence shows that every AAU member uses and plans to continue using the H-1B program. Indeed, only 69 of its members are based in the United States. *See* Plaintiffs' Fact #16. Members outside of the United States would not use the H-1B program. Furthermore, Paragraph 5 of the Snyder declaration does not state that every member uses the H-1B program and that every member plans to continue to do so, it lacks any foundation to show that it is based on personal knowledge, and to the extent it is based on

11

discussion with members, it is inadmissible hearsay. *See* Fed. R. Evid. 602, 801; Fed. R. Civ. P. 56(c)(4), (e). To the extent Plaintiffs meant to rely on Paragraph 6, that paragraph also lacks any foundation to show that it is based on personal knowledge, and to the extent it is based on discussion with members, it is inadmissible hearsay. *See* Fed. R. Evid. 602, 801; Fed. R. Civ. P. 56(c)(4), (e).

Defendants do not dispute that the Universities with separate declarations identified in Fact #16 use and plan to continue using H-1B program, although it is unclear whether that means hiring H-1B holders already in the United States or filing new petitions. Indeed, the CMU declaration states that CMU is undecided on whether to file new petitions. ECF 18-8 ¶ 11. Defendants also do not dispute that Michigan and UW-Madison may qualify for cap-exempt H-1B petitions, depending on the scope of the position sought to be filled. Defendants dispute that Paragraph 6 of the Snyder Declaration states that all universities are cap-exempt. That paragraph contains no such information, and such a statement would, at any rate, be a legal conclusion without foundation, or otherwise lacking in foundation or inadmissible hearsay. Fed. R. Evid. 602, 801; Fed. R. Civ. P. 56(c)(4), (e).

**Plaintiffs' Fact # 18:** AAU members have submitted thousands of H-1B visa petitions in 2025. Snyder Decl. ¶ 6.

**Defendants' Response:** Disputed. The statement in the Synder declaration lacks any foundation or specificity to show that Snyder has personal knowledge of how many H-1B petitions were submitted by AAU members in 2025 and is thus inadmissible as lacking foundation or personal knowledge or as inadmissible hearsay. Fed. R. Evid. 602, 801; Fed. R. Civ. P. 56(c)(4), (e).

**Plaintiffs' Fact #19:** Before the Proclamation was issued, AAU members planned to submit H-1B visa petitions this fall on behalf of new H-1B workers, but have now had to put on hold petitions

subject to the Proclamation's $100,000 fee. CMU Decl. ¶ 9; Minnesota Decl. ¶ 11; Utah Decl. ¶ 9; WashU Decl. ¶¶ 9-10.

**Defendants' Response:** Undisputed that the specific AAU member declarations cited state that they have put some H-1B petitions on hold. Disputed to the extent Plaintiffs suggest all AAU members placed petitions on hold. Disputed to the extent that the fact suggests the members "had" to place the petitions on hold, as opposed to making a choice to place the petitions on hold because of the tradeoffs of hiring for the position versus making the $100,000 payment. Defendants do not believe, and Plaintiffs have not provided proof, that these universities with hundreds of millions, if not billions, of dollars in endowments cannot afford the payment if the workers are truly so important. Their choice not to pay reflects their determination that those workers are not worth the $100,000 payment.

**Plaintiffs' Fact #20:** AAU members have had to put other recruiting and hiring efforts on hold as a result of the Proclamation. JHU Decl. ¶ 9; Utah Decl. ¶¶ 7–8, 10.

**Defendants' Response:** Undisputed that the specific AAU member declarations cited state that they have put some recruiting and hiring efforts on hold. Disputed to the extent Plaintiffs suggest all AAU members placed such efforts on hold. Disputed to the extent that the fact suggests the members "had" to put recruiting and hiring efforts on hold, as opposed to making a choice to do so.

**Plaintiffs' Fact # 21:** The Proclamation does not itself exempt any specific noncitizen, category of noncitizen, company, or industry from the requirements specified in the Proclamation. Hughes Decl. Ex. 1.

**Defendants' Response:** Disputed. The Proclamation is narrow in scope, applying only to foreign nationals outside of the United States, lacking a valid H-1B visa, who seek to enter the United States on an H-1B visa granted on a petition filed after the effective date of the

Proclamation. *See, e.g.,* Plaintiffs' Exhibits 1 through 5. Thus, it necessarily exempts certain aliens, and categories of aliens who fall outside of its scope.

**Plaintiffs' Fact # 22:** The Proclamation does not require that the Secretary of Homeland Security grant any waivers or exceptions pursuant to Section 1(c) of the Proclamation. Hughes Decl. Ex. 1

**Defendants' Response:** Undisputed.

**Plaintiffs' Fact #23:** As of October 23, 2025, the Secretary of Homeland Security has not yet granted any waiver or exception pursuant to Section 1(c) of the Proclamation.

**Defendants' Response:** Undisputed.

**Plaintiffs' Fact #24:** The Secretary of Homeland Security will grant an exception to the Proclamation's requirements only in extraordinarily rare circumstances. Hughes Decl. Ex. 5.

**Defendants' Response.** Disputed as a partial characterization of the exhibit which speaks for itself. The full quote from USCIS's website is: "Exceptions to the $100,000 payment are granted by the Secretary of Homeland Security in the extraordinarily rare circumstance where the Secretary has determined that a particular alien worker's presence in the United States as an H-1B worker is in the national interest, that no American worker is available to fill the role, that the alien worker does not pose a threat to the security or welfare of the United States, and that requiring the petitioning employer to make the payment on the alien's behalf would significantly undermine the interests of the United States."

**Plaintiffs' Fact #25:** To the extent that the Secretary of Homeland Security elects to grant an exception to the Proclamation's requirements pursuant to Section 1(c) of the Proclamation, she will do so only on an individual-by-individual basis. Hughes Decl. Ex. 5. The Secretary of Homeland Security will not grant any company-wide or industry-wide waivers or exceptions pursuant to Section 1(c) of the Proclamation. *Id.*

**Defendants' Response:** Disputed. The USCIS website does not make the statement in Fact #25. USCIS's website speaks for itself. The ultimate decision of whether to grant exceptions is in the discretion of the Secretary of Homeland Security, based upon her findings, as stated in the Proclamation.

**Plaintiffs' Fact #26:** The federal government has not committed in any of the agency guidance issued pursuant to the Proclamation that it will recognize any fees paid in compliance with the Proclamation as "allowable cost[s]" related to "[s]hort term visas" under 2 C.F.R. § 200.463(d).

**Defendants' Response:** As explained in Defendants' memorandum in support of its opposition to summary judgment, the payment is not a "fee." Defendants' do not dispute that there are no statements about whether the Proclamation Payment qualifies under 2 C.F.R. § 200.463(d).

Respectfully submitted,

DREW C. ENSIGN
Deputy Assistant Attorney General

AUGUST FLENTJE
Special Counsel for Immigration

TIBERIUS DAVIS
Counsel to the Assistant Attorney General

GLENN M. GIRDHARRY
Acting Deputy Director

By: */s/ Alexandra McTague*
Alexandra McTague
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 718-0483
Email:alexandra.mctague2@usdoj.gov
*Attorneys for Defendants*