**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA and ASSOCIATION OF AMERICAN UNIVERSITIES, | |
| Plaintiffs, | Case No. 1:25-cv-3675-BAH |
| v. | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY et al., | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**MOTION FOR RELIEF FROM LOCAL RULE 7(n) AND**
**CROSS-MOTION TO HOLD DEFENDANTS' MOTION FOR**
**SUMMARY JUDGMENT IN ABEYANCE**

Well over a month ago, plaintiffs moved for a preliminary injunction or, in the alternative, summary judgment on their claims. The reason is simple: plaintiffs require urgent relief from implementation of a Presidential Proclamation designed to upend the H-1B visa program by imposing a $100,000 fee on H-1B petitions; the Proclamation already is massively disrupting plaintiffs' ability to recruit the talent needed to fulfill their missions as businesses and educational institutions. Recognizing the urgency, this Court ordered an expedited briefing schedule for summary judgment, meaning plaintiffs might obtain the relief they need before the end of the year, as respectfully requested.

On December 1, the government filed an opposition to plaintiffs' motion for summary judgment and filed a cross-motion for summary judgment. Local Rule 7(n) requires that the government file the administrative record at least simultaneously with any "dispositive motion." Instead, the government filed a cross-motion for summary judgment bolstered by declarations and exhibits—but without the administrative record—and asked the Court to dispense with Rule 7(n)'s

foundational requirement that it produce an administrative record.

The government's central argument is that because plaintiffs moved for summary judgment prior to the production of the administrative record, plaintiffs somehow agreed that the entire case can be resolved without that record. But that is incorrect. The government has not just opposed plaintiffs' motion for summary judgment but cross-moved for summary judgment as well. And now it asks the Court to dispose of the case with no opportunity for plaintiffs or the Court to review the full record, as required under Local Rule 7(n) and the Administrative Procedure Act. Rule 7(n) was designed to prevent such a lopsided and limited review. Under fundamental precepts of administrative law and due process, review of agency action should be done on the "whole record" rather than on a curated factual accounting of the government's choosing. *See* 5 U.S.C. § 706.

This Court should deny the government's extraordinary request and adjudicate plaintiffs' motion for summary judgment according to the schedule it ordered. That is, the Court should either (1) hold the government's motion for summary judgment—as well as its request for relief from Rule 7(n)—in abeyance or (2) deny the government's motion to dispense with Rule 7(n) and order the government to produce an administrative record by December 5, so plaintiffs may review the administrative record before responding to the government's cross-motion.

## BACKGROUND

On September 19, 2025, President Trump announced Proclamation 10973, *Restriction on Entry of Certain Nonimmigrant Workers*, 90 Fed. Reg. 46,027 (Sept. 19, 2025) (the Proclamation). *See* Hughes Decl. Ex. 1, Dkt. 18-19. The Proclamation, which purports to be issued pursuant to the President's authority under Sections 212(f) and 215(a) of the Immigration and Nationality Act (INA), conditions the entry of noncitizens into the United States under the H-1B program on their prospective employer making a payment of $100,000. *Id.* at 46,028. In other words, the Proclamation imposes a new $100,000 fee for H-1B petitions found nowhere in the text of the INA. The Proclamation, however, is not self-executing in certain critical respects, and it thus requires

independent implementation by government agencies.

The Proclamation is having its intended effect, upending the H-1B visa program and the enormous benefits it provides the United States economy. Plaintiffs are two associations that collectively represent the interests of thousands of employers that currently employ tens (if not hundreds) of thousands of H-1B workers and that planned to hire thousands more in the coming year. As fully detailed in their Amended Complaint (Dkt. 8 at ¶¶ 91–102), the memorandum in support of the preliminary injunction and summary judgment motion (Dkt. 18-1 at 12–13, 36), and the accompanying declarations (Dkts. 18-4 through 18-17), the Proclamation has resulted in largescale, ongoing, and escalating disruption to business and educational institutions. Many employers can no longer hire any H-1B workers—and more cannot hire as many H-1B workers as planned—meaning that they must disrupt hiring and recruitment plans already in effect, and, in many cases, go without anticipated personnel. Dkt. 18-1 at 39–41.

The U.S. Chamber of Commerce filed suit on October 16, 2025. *See* Dkt. 1. The next week, plaintiffs amended the complaint as of right, adding the Association of American Universities as a plaintiff. *See* Dkt. 8. Plaintiffs' complaint alleges that the Proclamation unlawfully exceeds the President's authority and that any agency action implementing it must be declared unlawful, enjoined, and set aside. The complaint also alleges that "[t]he Proclamation is not entirely self-executing but, rather, requires independent implementation by agencies and authorizes agencies to make independent judgments." Dkt. 8 ¶ 200. It further alleges that agency action implementing the Proclamation violates the Administrative Procedure Act because any resulting action will be "taken pursuant to directions from the President made in excess of his lawful authority," "would be procedurally arbitrary and capricious, as the imposition of a fee on H-1B petitions by the executive branch must be done via notice-and-comment rulemaking," and "such action would be unlawful and arbitrary and capricious because there are no 'find[ings]' related to the targeted class of noncitizens, as required under Section 212(f), and the Proclamation rests on arguments and data

citations that are conclusory, manifestly inaccurate, and fail to consider important aspects of the problem." *Id.* ¶¶ 203–205.

On October 24, 2025, plaintiffs moved for a preliminary injunction, or, in the alternative, summary judgment, requesting relief by December 2025. *See* Dkt. 18. The government sought to indefinitely stay consideration of the motion pending the government shutdown, or, in the alternative, to extend its response deadline to 30 days following the Court's denial of a stay motion. *See* Dkts. 22, 25. It also sought clarification on how to respond to plaintiffs' combined summary judgment and preliminary injunction motion. *See* Dkt. 25 at 2. In response, the Court converted plaintiffs' motion solely to a motion for summary judgment. *See* Minute Order (Oct. 29, 2025). Appreciating the urgency of plaintiffs' claims and their need for immediate relief, the Court entered an expedited briefing schedule to consider plaintiffs' motion for summary judgment, with the government's response due November 28 and briefing to be completed on December 8. *Id.* Last week, the government requested a last-minute, one-week extension of time to respond, without ever mentioning its intention to file a cross-motion. *See* Dkt. 29. The Court granted the request in part, ordering a response by December 1. *See* Minute Order (Nov. 25, 2025).

On Friday, November 28, government counsel for the first time raised with plaintiffs' counsel the question of relief from Local Rule 7(n). Then, on December 1—the very day the government's opposition was due pursuant to the extension—the government informed plaintiffs that it would *both* cross-move for final judgment in its favor *and* request relief from Local Rule 7(n), meaning that the government would seek final judgment in its favor without ever providing an administrative record. The government's cross-motion does not acknowledge the disruption the motion causes to the Court-ordered expedited briefing schedule, including, most significantly, the fact that any reply by the government in support of its cross-motion would significantly extend briefing beyond the period ordered by the Court. *See* Dkt. 37.

**ARGUMENT**

The Court should reject the government's approach by either staying consideration of the government's cross-motion for summary judgment in its entirety or else denying the motion for relief from 7(n) and ordering the government to produce the administrative record by December 5. The government unreasonably delayed making its request and, unlike plaintiffs, has no urgent need to request a dispositive judgment in its favor. Although plaintiffs agree that the Court can adjudicate *their* motion for summary judgment without the administrative record, an administrative record is required before this Court may consider whether to enter final judgment *against* plaintiffs on the merits of their Administrative Procedure Act claims.

**I.** The timing of the government's motion renders its request for relief flatly unreasonable. Because the Court ordered the expedited schedule for resolving plaintiffs' summary judgment motion more than a month ago, on October 29, 2025, the government has long been aware that it is required to oppose plaintiffs' summary judgment motion. The government has likewise long known that Rule 7(n) obligates it to file an administrative record in the event the government files a "dispositive motion." Here, the government chose to cross-move for summary judgment, thus filing a "dispositive motion," but did not comply with its obligations under Rule 7(n). Rather than request such relief in advance to allow for judicial approval (or rejection) of this course of conduct, the government simply filed its request *simultaneously* with its summary judgment motion. That is, the government is filing a "dispositive motion" while knowingly breaching its Rule 7(n) obligations, asking the Court to grant *ex post* forgiveness. If the government had timely raised this issue weeks ago,[1] and the Court had rejected the government's request for relief from Rule 7(n), an administrative record would have been produced by now.

---

[1]    The government did not inform plaintiffs until Friday, November 28, that it was even contemplating seeking relief from Rule 7(n). Plaintiffs did not at that time deny consent; they asked if the government intended to cross-move. The government informed plaintiffs of its intent to cross-move only on December 1—the day it filed its cross-motion and Rule 7(n) motion.

The Court should not reward the government's delay tactics. The Court already has found that plaintiffs allege "present harm" demanding "prompt adjudication." *See* Minute Order (Oct. 29, 2025). The government should not be allowed to slow this matter further.

The government's delay renders its overheated rhetoric even more regrettable. The government avers that "[p]laintiffs, of course, oppose this motion, just as they have opposed every request for relief made by Defendants to date" and accuses plaintiffs of "wasting time and resources for no legitimate purpose." Mot. 5. Plaintiffs have been unable to consent to the government's requests so far because there is a theme to them all: they disregard the urgency of the relief that plaintiffs require. *See* Dkt. 22 (requesting an indefinite stay); Dkt. 29 (seeking a last-minute one-week extension of the Court's expedited briefing schedule). The government's latest actions—asking to be relieved of Local Rule 7(n) after already violating it—is much the same.

**II.** The government's request for relief from Rule 7(n) also is wrong in substance.

**a.** Rule 7(n) requires the federal government, in "cases involving the judicial review of administrative agency actions," to (1) "file a certified list of the contents of the administrative record with the Court . . . simultaneously with the filing of a dispositive motion" and (2) coordinate with all counsel to "provide the Court with an appendix containing copies of those portions of the administrative record that are cited or otherwise relied upon in any memorandum in support of or in opposition to any dispositive motion." LCvR 7(n).

Those requirements are rooted in core precepts of administrative law and the fundamental fairness guaranteed by the Due Process Clause. Review of agency action under the APA is to be made in light of the "whole record." 5 U.S.C. § 706. That is, "all documents and materials that the agency 'directly or indirectly considered'" "[and nothing] more nor less." *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006) (quoting *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993)). These requirements apply "when[ever] courts must determine whether the '[agency] process was reasonable and whether the decision was consistent with Congressional

intent.'" *Vargus v. McHugh*, 87 F. Supp. 3d 298, 301 (D.D.C. 2015) (quoting *Swedish Am. Hosp. v. Sebelius*, 691 F. Supp. 2d 80, 85 (D.D.C. 2010)). And it is fundamental to due process that "a party is entitled to know the issues on which decision will turn and to be apprised of the factual material on which the agency relies for decision so that he may rebut it. Indeed, the Due Process Clause forbids an agency to use evidence in a way that forecloses an opportunity to offer a contrary presentation." *Williston Basin Interstate Pipeline Co. v. FERC*, 165 F.3d 54, 63 (D.C. Cir. 1999) (cleaned up) (quoting *Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 288 n. 4 (1974)); *see also, e.g.*, *Connecticut v. Doehr*, 501 U.S. 1, 14 (1991) ("[F]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights").

Accordingly, the government may not dispense with the requirements of Rule 7(n) "unless otherwise ordered by the Court" (LCvR 7(n)) and must make a compelling showing to do so. Courts in this District studiously defend the "presumptive guarantee of review based on the entire record" and will require production of an administrative record where its absence would "frustrate . . . judicial review" of agency action or "trump the 5th Amendment's guarantee of due process." *MetLife, Inc. v. Fin. Stability Oversight Council*, 2015 WL 13680210, at *1 (D.D.C. Dec. 8, 2015). After all, "[t]o review less than the full administrative record might allow a party to withhold evidence unfavorable to its case and so the APA requires review of the whole record." *Vagus*, 87 F. Supp. 3d at 301 (quotation marks omitted) (quoting *Boswell Memorial Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)). Otherwise, "where one party might be unaware of some parts of the record, failure to produce the Record in its entirety would produce 'asymmetry in information [that] undermines the reliability of a court's review . . . .'" *Id.* at 302 (quoting *Boswell Mem'l Hosp.*, 749 F.2d at 793).

**b.** These principles compel the denial of the government's motion. Plaintiffs' APA claims relate to the *actions* taken by the government, both publicly and behind the scenes to implement the Proclamation; the *information* in front of the government when it took those actions; and the

government's *reasons* for implementing the Proclamation in the manner it did. These sorts of claims regarding whether the "[agency] process was reasonable and whether the decision was consistent with Congressional intent" are prototypical cases for an administrative record. *Vargus*, 87 F. Supp. 3d at 301 (quoting *Swedish Am. Hosp.*, 691 F. Supp. 2d at 85).

In its motion, the government makes much of the fact that plaintiffs have moved for summary judgment on certain of their theories without an administrative record; indeed, plaintiffs argue for relief as a matter of law regardless of any further support that they may find in the record. *See, e.g.*, Mot. 3, 5. The government argues that, because plaintiffs filed an "early summary judgment motion without reliance on the administrative record," this somehow means there are no factual disputes between the parties *at all*. *Id.* at 5.

The government's argument is difficult to understand. Plaintiffs surely can argue that they are entitled to relief on certain, purely legal theories that do not require an administrative record, while also reserving for later certain fact-intensive arguments (such as arbitrary-and-capricious agency action) that may well require an administrative record. Far from "mak[ing] no sense" (Mot. 5), it is entirely sensible that plaintiffs—facing an emergency caused by the government's actions—sought speedy judgment in their favor based on certain legal arguments, without forfeiting more factual arguments that, by their nature, are not as conducive to early adjudication. Nor is there anything unusual about plaintiffs both requesting relief without an administrative record, yet objecting to the government's request for final judgment in *its* favor—which would foreclose plaintiffs' more factual arguments—before an administrative record is ever produced.

The government's refusal to produce an administrative record is also at odds with the approach it has taken in its opposition and cross-motion. The government provides a declaration of Jerome Jackson (Dkt. 36-2), which the government uses to make intricate factual points about the mechanics of how the Proclamation's H-1B fee is collected and the monies stored. *See* Dkt. 36-1 at 36. Plaintiffs are entitled to an administrative record to rebut that evidence. Indeed, the

government's insertion of factual matter into the litigation by *ad hoc* declaration, rather than by the administrative record, is wholly improper. *See, e.g.*, *Stainback v. Sec'y of Navy*, 520 F. Supp. 2d 181, 185 (D.D.C. 2007) ("[J]udicial review of agency action under the APA must be based on the full administrative record that was before the agency at the time the decision was made. . . . It is therefore improper for a district court to review only a 'partial and truncated [administrative] record.'" (quoting *Nat'l Res. Def. Council, Inc. v. Train*, 519 F.2d 287, 291 (D.C. Cir. 1975))). The government simply cannot produce to the Court limited, curated facts via declaration and ask for a final judgment on the merits—all while refusing to produce the actual administrative record.

The government's proposal here would create exactly the result courts in this District have deemed intolerable—an "asymmetry in information" (*Vargus*, 87 F. Supp. 3d at 302) that "might allow a party to withhold evidence unfavorable to its case" (*id.* at 301) and would "frustrate . . . judicial review" of agency action and "trump the 5th Amendment's guarantee of due process" (*Met-Life*, 2015 WL 13680210, at *1). To preserve the orderly and fair adjudication of plaintiffs' claims, the Court should resolve plaintiffs' motion for summary judgment, as scheduled. If the Court denies plaintiffs' motion for summary judgment, it can then turn to consideration of the government's cross-motion with the benefit of a full administrative record. The government has not—because it cannot—demonstrate that there is some urgency in obtaining a final judgment in its favor. Unless and until this Court grants plaintiffs relief, the Proclamation will continue to govern.

**c.** The government's additional arguments do not establish entitlement to forgo an administrative record. The government argues that "consideration of the administrative record . . . would only invite error," particularly with respect to factual issues related to the findings underpinning the Proclamation. Mot. 4. The government's self-serving judgment that consideration of the administrative record would invite confusion deserves no credence. If the information contained in the administrative record ultimately is unhelpful or irrelevant, the government is free to explain as much once it has produced the record for all to see. *See Roelofs v. Sec'y of Air Force*, 628 F.2d

594, 599 (D.C. Cir. 1980) ("The APA embodies the notion that 'Rule of Administrative Law' places emphasis on a broad-gauged appraisal of the decision-making process, and assurance of its reliability." (quotation marks omitted)).

Equally wrong is the government's assertion that no administrative record is needed because "[i]t is also improper to evaluate the Presidents' actions under the APA, including the agency 'implementation' which is little more than the agency's restatement of the Presidential directive, which is discretionary." Mot. 4. The Proclamation contemplates and indeed requires implementation by agencies, including in ways that the Proclamation itself does not resolve, such as how the Secretary of Homeland Security will implement the directive to "restrict decisions on petitions not accompanied by a $100,000 payment for H-1B specialty occupation workers . . . who are currently outside the United States," what "guidance" the Secretary of State has issued "to prevent misuse of B visas by alien beneficiaries of approved H-1B petitions that have an employment start date beginning prior to October 1, 2026," and whether and how the Secretary of Homeland Security is implementing the exception for noncitizens whose hiring she determines to be "in the national interest and . . . not  . . . a threat to the security or welfare of the United States."  And in all events, rather than take the government's description of its implementation of the Proclamation at face value, the Court should require the production of the actual administrative record—which would either substantiate or disprove the lawyerly *ipse dixit*.[2]

**III.** For the reasons described above, plaintiffs request that the Court deny the government's request for relief. The Court should hold the government's cross-motion for summary

---

[2]    The cases the government cites are inapposite. Mot. 4-5. *Tulare Cnty. v. Bush*, 185 F. Supp. 2d 18, 21 (D.D.C. 2001) and *Ancient Coin Collectors Guild v. CBP,* 801 F. Supp. 2d 383, 403 (D. Md. 2011) were both decided on motions to dismiss where there evidently was no dispute that the agency defendants were "merely carrying out directives of the President." *Tulare Cnty.*, 185 F. Supp. 2d at 28. Here, plaintiffs allege and argue otherwise. To the extent the government intends to overcome that allegation by way of factual dispute regarding the character of the government's action, producing an administrative record is the proper means to do so.

judgment in abeyance. This course of action is the most respectful of the schedule ordered by the Court, the most efficient use of the Court's time (and the parties'), and avoids any prejudice to plaintiffs resulting from the government's unreasonable approach. If the Court grants plaintiffs' motion for summary judgment, then the government's cross-motion will be moot. If the Court denies plaintiffs' motion, then the parties and the Court will be able to turn to the government's cross-motion, with the benefit of an administrative record. At that time, plaintiffs may also seek additional relief on their APA claims, with the benefit of the administrative record.

In the alternative, plaintiffs request that the government be ordered to immediately produce an administrative record, in accordance with Rule 7(n), so plaintiffs have the benefit of an administrative record before being required to defend against an adverse final judgment. Plaintiffs respectfully request that the Court order the government to produce the administrative record by December 5, 2025.

## CONCLUSION

The Court should deny the government's request for relief. It would be appropriate to stay consideration of the government's cross-motion for later in the litigation, following the government's production of the administrative record. Or the Court should order the government to produce the administrative record by December 5, 2025.

Dated:  December 2, 2025

Respectfully submitted,

/s/ *Lindsay C. Harrison*

Adam G. Unikowsky (Bar No. 989053)
Elizabeth Henthorne (Bar No. 1562688)
Ishan K. Bhabha (Bar No. 1015673)
Lindsay C. Harrison (Bar No. 977407)
Zachary C. Schauf (Bar No. 1021638)
JENNER & BLOCK LLP
1099 New York Avenue NW
Suite 900
Washington, DC 20001-4412
T: +1 202 637 6000
F: +1 202 639 6066
lharrison@jenner.com

*Attorneys for Plaintiff Association of American Universities*

/s/ *Paul W. Hughes*

Paul W. Hughes (Bar No. 997235)
Sarah P. Hogarth (Bar No. 1033884)
Mary H. Schnoor (Bar No. 1740370)
Grace Wallack (Bar No. 1719385)
Alex Boota (Bar No. 90001014)
Emmett Witkovsky-Eldred (Bar No. 90012725)
MCDERMOTT WILL & SCHULTE LLP
500 North Capitol Street NW
Washington, DC 20001
(202) 756-8000
phughes@mwe.com

Daryl L. Joseffer (Bar No. 457185)
U.S. CHAMBER LITIGATION CENTER
1615 H Street NW
Washington, DC 20062
(202) 463-5337
djoseffer@uschamber.com

*Attorneys for Plaintiff Chamber of Commerce of the United States of America*